*NOT FOR PUBLICATION*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| TINA M. LOCKHART,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>DORRANCE PUBLISHING COMPANY, INC.,<br><br>　　　Defendants. | Civil Action No.: 22-02929(FLW)<br><br>**OPINION** |

**WOLFSON, Chief Judge:**

Plaintiff Tina M. Lockhart ("Plaintiff") filed a complaint ("Complaint") against Dorrance Publishing Company, Inc. ("Dorrance" or "Defendant") on behalf of herself and all others similarly situated, alleging violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.* (2005) ("NJCFA"), and breach of contract, in connection with the publication of Plaintiff's novel, titled *Ten Houses Filled with Leaves.*  Presently before the Court is Defendant's motion to dismiss (the "Motion") the Complaint for failure to state a claim pursuant to Fed. R. of Civ. P. 12(b)(6).  For the reasons set forth below, the Motion is **GRANTED**.  Plaintiff is given leave to amend her Complaint within 30 days from the date of the accompanying Order, consistent with this Opinion.

### I.　　FACTUAL AND PROCEDURAL HISTORY

The relevant facts are derived from Plaintiff's Complaint.  Plaintiff is a New Jersey resident of the Township of Mercer, (Complaint ("Compl.") ¶ 5, ECF No. 1), and Defendant is a Pennsylvania-based publishing company.  (*Id.* ¶ 6.)

On or around April 2008, Plaintiff entered into a publishing contract with Defendant for the publication of her book, pursuant to the following terms: (1) Defendant would receive a $8,000 payment from Plaintiff; (2) Defendant was entitled to a percentage of the revenue received for each copy of the book sold (*i.e.*, 60% for domestic sales and 25% for foreign sales); and (3) Defendant would distribute to Plaintiff the remaining percentage of the revenue.  (*Id.* ¶¶ 1, 17, 18, 37.)  Pursuant to the contract, Defendant was responsible for tracking and recording the number of book sales and distributing the appropriate royalties to Plaintiff.  (*Id.* ¶¶ 20–21.)  Specifically, Section VII of the contract required Defendant to send Plaintiff "statements of any sales made and remit the author's payments from the sale of the work on January 31, and July 31 of each year." (*Id.* ¶ 70.)  The period of the contract was approximately from August 2008 through September 2, 2015.  (*Id.* ¶¶ 1, 31.)

Plaintiff's book was published by Defendant in August 2008.  (*Id.* ¶ 18.)  Between 2008 and 2015, Plaintiff received payments from Defendant totaling $10.20, reflecting royalties she earned from the sales of her book.  (*Id.* ¶¶ 2, 19, 30.)  According to Defendant, the total number of copies her book sold during this time period was nine.  (*Id.* ¶ 19.)  By letter dated September 2, 2015, Defendant notified Plaintiff that it was terminating Plaintiff's contract effective September 30, 2015, after which Defendant would no longer be obligated to pay royalties to Plaintiff for any copies sold.  (*Id.* ¶ 31.)

Plaintiff alleges that, in the fall of 2019, she learned for the first time the "true sales" for her book through a web feature on Amazon.com called "Author Central" which reports the number

of units sold and organizes sales data by geographic region.  (*Id.* ¶¶ 33–34.)  Specifically, Plaintiff alleges that she noticed that her book was available for purchase on Amazon.  (*Id.* ¶ 33.)[1]  Plaintiff alleges she learned that she could access her Amazon Author Central webpage ("Amazon Author Central Page") and from it, accessed a domestic sales report for her book, from April 9, 2012 through May 6, 2012 ("Amazon Sales Report").  (*Id.* ¶ 35.)  This report, she alleges, reported that her book sold 51,133 copies within that four-week period.  (*Id.*)  Amazon listed Plaintiff's book on its website for $11.00 per copy.  (*Id.* ¶ 36.)  Based on these sales, Plaintiff alleges that Defendant has withheld royalties to which she is entitled as a result of these unreported sales of her book.

On May 19, 2022, Plaintiff filed the instant Complaint against Defendant, asserting claims under the NJFCA and breach of contract.  (ECF No. 1.)  On August 8, 2022, Defendant moved to dismiss the Complaint pursuant to Rule 12(b)(6).  (ECF No. 4.)

## II.   <u>STANDARD OF REVIEW</u>

### a.  **Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  On a motion to dismiss for failure to state a claim, the moving party "bears the burden of showing that no claim has been presented."  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)); *United Van Lines, LLC v. Lohr Printing, Inc.*, No. 11-4761, 2012 WL 1072248, at *2 (D.N.J. Mar. 29, 2012).

---

[1] The Court notes that although Plaintiff neither identified, nor included a screenshot of any webpage with respect to the online sale of her book on Amazon, the Court found the relevant Amazon book page for Plaintiff's book. AMAZON, https://www.amazon.com/gp/product/0805961208/ref=dbs_a_def_rwt_bibl_vppi_i0 (last visited Jan. 10, 2023).  As of the date of this Opinion, Plaintiff's book is no longer available for purchase on Amazon nor is the price of the book listed on the Amazon book page.  Regardless, because it is, at best, questionable whether the Amazon book page is integral to Plaintiff's claims, the Court need not consider it in ruling on this motion.  Even if the Court could consider it, as discussed in detail *infra* n.11, the Amazon book page does not directly contradict the specific number of sales that Plaintiff alleges.

When reviewing a motion to dismiss for failure to state a claim, courts first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). A well-pleaded complaint includes all the essential elements of the plaintiff's claims. *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996). While Federal Rule of Civil Procedure 8(a)(2) does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Id*. at 570; *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). All reasonable inferences must be made in the plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig*., 618 F.3d 300, 314 (3d Cir. 2010). The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937.

### III.   DISCUSSION

#### a.  Statute of Limitations

First, Defendant seeks dismissal of Plaintiff's claims by arguing that both are time-barred by the expiration of the relevant statutes of limitations. (Def. Br. at 8.) Plaintiff argues that the statute of limitations should be equitably tolled as to each of her claims because of Defendant's

fraudulent concealment of the accurate number of sales for her book.  (Compl. ¶ 44; Pl. Opp. Br. at 19–20.)

"Defendants may raise a statute of limitations defense in a 12(b)(6) motion to dismiss if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'"  *Perelman v. Perelman*, 545 Fed.Appx. 142, 149 (3d Cir. 2013) (quoting *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002)).  The time bar must be evident on the face of the complaint for the complaint to create a basis for dismissal.  *Id*.  In diversity actions, such as the instant case, federal courts apply the substantive law of the forum state, which includes state statutes of limitations.  *Lafferty v. St. Riel*, 495 F.3d 72, 76 (3d Cir. 2007) (citations omitted); *see also Warriner v. Stanton*, 475 F.3d 497, 499–500 (3d Cir. 2007) ("[I]n a diversity action, a district court must apply the choice of law rules of the forum state to determine what law will govern the substantive issues of a case") (citation omitted).

Under New Jersey law, the statute of limitations for breach of contract claims is six years. N.J.S.A. § 2A:14–1 ("Every action at law ... for recovery upon a contractual claim or liability ... shall be commenced within six years next after the cause of any such action shall have accrued."). Claims asserted under the NJCFA are also subject to a six-year statute of limitations.  *See Biegalski v. Am. Bankers Ins. Co. of Fla.*, No. 14-6197, 2016 WL 1718101, at *4 (D.N.J. Apr. 29, 2016) (citing N.J.S.A. § 2A:14–1).  The Supreme Court of New Jersey has provided as follows: "[f]or purposes of determining when a cause of action accrues so that the applicable period of limitation commences to run, the relevant question is when did the party seeking to bring the action have an enforceable right."  *Metromedia Co. v. Hartz Mountain Assocs.*, 139 N.J. 532, 535 (1995) (quoting *Andreaggi v. Relis*, 171 N.J.Super. 203, 235–36 (Ch. Div. 1979)).  For NJCFA claims, that limitations period runs from the time the alleged fraud occurred or the time it could have been

discovered with reasonable diligence, *Rodrigues v. Wells Fargo Bank, N.A.*, 751 Fed.Appx. 312, 318 (3d Cir. 2018) (citation omitted), and as for breach of contract claims, the cause of action accrues from the date that the contract was breached.  *See Peck v. Donovan*, No. 07-5500, 2009 WL 900068, at *2 (D.N.J. Mar. 31, 2009).

Here, looking only to the dates alleged in the Complaint, Defendant's alleged fraud and breach of contract both occurred during the term of the contract, from August 2008 through 2015, which means Plaintiff's claims began to accrue during this time period.  As a result, the six-year applicable limitations period governing both claims expired well before Plaintiff filed the Complaint on May 19, 2022.  Thus, unless the discovery rule or the equitable tolling doctrine, as discussed *infra*, applies to toll or extend the time period Plaintiff had to file her claims, both claims would be time-barred.[2]

### i. Fraudulent Concealment

Plaintiff argues that her claims were timely filed because the limitations period had been equitably tolled by Defendant's fraudulent concealment of Plaintiff's book sales.  (Compl. ¶ 44.) In opposition, Defendant argues that Plaintiff did not sufficiently plead that reasonable diligence would not have allowed her to discover her alleged injury before 2019.  (Def. Br. at 10–11.)

Equitable tolling, if available, can rescue a claim otherwise barred as untimely by a statute of limitations when a plaintiff has "been prevented from filing in a timely manner due to

---

[2] While Plaintiff's arguments in her brief focus on the equitable tolling doctrine based on a theory of fraudulent concealment, (Pl. Opp. Br. at 19–24), this Court notes that the discovery rule and the equitable tolling doctrine are distinct.  *See Freeman v. State*, 347 N.J.Super. 11, 30–31 (App. Div. 2002); *Smith v. Twp. of Warren*, No. 14-7178, 2016 WL 7409952, at *15 n.12 (D.N.J. Dec. 22, 2016).  "The discovery rule postpones the accrual of a cause of action" for statute of limitation purposes.  *Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F.Supp.2d 537, 542 (D.N.J. 2013). Equitable tolling, on the other hand, recognizes the accrual of an action but "tolls the statute of limitation because the defendant's inequitable conduct 'induced or tricked' the plaintiff to miss the filing deadline".  *Id.* (quoting *Freeman*, 347 N.J.Super. at 31).  In the latter circumstance, a defendant is denied the benefit of the statute of limitations due to his own wrongdoing. *Trinity Church v. Lawson-Bell*, 394 N.J.Super. 159, 171 (App. Div. 2007).

sufficiently inequitable circumstances." *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 240 (3d Cir. 1999) (citations omitted); *Hedges*, 404 F.3d at 751 (noting that equitable tolling is a rare, "extraordinary remedy."). In New Jersey, it is well established that where there is fraudulent concealment of a cause of action, the period of limitation will not commence until discovery of the wrong or of facts which reasonably put one on notice. *See Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F.Supp.2d 537, 542 (D.N.J. 2013); *Foodtown v. Sigma Mktg. Sys., Inc.*, 518 F.Supp. 485, 488 (D.N.J. 1980) (citations omitted).

Equitable tolling "is not generally amenable to resolution on a 12(b)(6) motion". *Martin v. Prudential Ins. Co. of Am.*, No. 12-6208, 2013 WL 3354431, at *8 (D.N.J. July 2, 2013) (internal quotations and citations omitted). At the motion to dismiss stage, a plaintiff who seeks to invoke equitable tolling need only "plead the applicability of the doctrine." *Perelman*, 545 Fed.Appx. at 151 (quoting *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1391 (3d Cir. 1994)). However, a plaintiff "cannot obtain the benefit of the doctrine on [ ] vague and conclusory allegations." *Parker v. Pressler & Pressler, LLP*, 650 F.Supp.2d 326, 339 (D.N.J. 2009). In order to take advantage of the doctrine of fraudulent concealment, a plaintiff must sufficiently allege "(1) wrongful concealment by the party raising the statute of limitations defense, resulting in (2) plaintiff's failure to discover the operative facts forming the basis of his cause of action during the limitations period (3) despite the exercise of due diligence." *Glauberzon v. Pella Corp.*, No. 10-5929, 2011 WL 1337509, at *5 (D.N.J. Apr. 7, 2011) (citation omitted). Wrongful concealment generally requires some sort of trickery or act of concealment beyond the original act of wrongdoing. *Stockroom*, 941 F.Supp.2d at 541. Further, because the underlying misconduct is fraud, equitable tolling under a theory of fraudulent concealment "must be pled with particularity pursuant to Rule 9(b)." *Harris v. Bristol-Myers Squibb Co.*, No. 11-6004, 2013 WL 5407193, at

*4 (D.N.J. Sept. 25, 2013) (citing *Kontonotas v. Hygrosol Pharm. Corp.*, 424 Fed. Appx. 184, 187 (3d Cir. 2011)); *see also Patetta v. Wells Fargo Bank, NA*, No. 09-2848, 2009 WL 2905450, at *4 n.7 (D.N.J. Sept. 10, 2009) ("At the very minimum, Plaintiffs were required to plead the who, what, where, and when of the purported fraud that prevented Plaintiffs from discovering the fraudulent misconduct.").

Here, Plaintiff alleges that Defendant committed fraudulent concealment by reporting that Plaintiff had only sold nine copies of her book when in reality, at least 51,133 copies had been sold domestically during a four-week period in 2012. (Compl. ¶ 69.) Plaintiff argues that this was in breach of Defendant's contractual duty to disclose to Plaintiff any sales of her book it made each year during the term of the contract. (*Id.* ¶ 70 (stating that Section VII of the contract required Defendant to send Plaintiff "statements of any sales made and remit the author's payments from the sale of the work on January 31, and July 31 of each year.").) Plaintiff contends that she did not become aware of Defendant's alleged fraudulent concealment of her book sales until 2019, when she first accessed the Amazon Author Central Page containing the sales report. (Compl. ¶¶ 33, 72; Pl. Opp. Br. at 21–22.) She alleges that, because Defendant had "exclusive access to the sales data and reporting", "she had no way of verifying the actual sales numbers of her book." (*Id.* ¶¶ 20, 62.) Defendant responds that Plaintiff did not exercise reasonable diligence because it took her "four full years after the termination of her contract to investigate how her book was performing", despite the alleged fact that Plaintiff's Amazon Author Central Page was available and accessible to her at any time during the term of the contract and thereafter. (Def. Br. at 10.)

First, Plaintiff has failed to plead, with specificity, how Defendant actively concealed its misconduct. Plaintiff alleges that "Defendant's misrepresentation, intentional non-disclosure and purposeful concealment" of the sales data constitutes fraudulent concealment. (Compl. ¶ 44.) But

such misconduct is merely an allegation of breach of the parties' contract. *See Stockroom*, 941 F.Supp.2d at 541 ("[F]or equitable tolling purposes; the doctrine requires an act of concealment or trickery beyond the *original* act of wrongdoing".) And while Plaintiff alleges that Defendant "tightly controls all of the orders, payments and fulfillment" and therefore, had "exclusive access to the sales data", (Compl. ¶¶ 21, 62), she fails to allege any specific facts as to how Defendant actively or purposefully prevented Plaintiff from learning of its alleged fraud through her own means. For example, even if Defendant did have sole access to the number of sales of Plaintiff's book across the collective channels through which it was sold, this would not prevent Plaintiff from independently accessing sales data for her book through any third-party platform, including Amazon. *See, e.g.*, *Carmen v. Metrocities Mortg.*, No. 08-2729, 2010 WL 421115, at *5 (D.N.J. Feb. 1, 2010) (rejecting plaintiffs' argument that defendant's "purported statement that they would timely record the mortgage somehow precluded Plaintiffs from discovering that in fact it had not been done.") As such, it cannot be reasonably concluded that Defendant actively misled or concealed from Plaintiff as to the existence of a cause of action. *See, e.g.*, *Hauptmann v. Wilentz*, 570 F.Supp. 351, 398 (D.N.J. 1983), *aff'd without opinion*, 770 F.2d 1070 (3d Cir. 1985).[3]

Neither has Plaintiff plead, with any particular facts, as to whether she exercised reasonable diligence in investigating Defendant's potential fraud. *See Miller v. N.J. Dep't of Corrections*, 145 F.3d 616, 618–19 (3d Cir. 1998) (stating that a party seeking equitable tolling based on fraudulent concealment must also demonstrate that he or she "exercised reasonable diligence in investigating and bringing the claims."). Nor does she plead that even if she had exercised reasonable diligence and intelligence, she would not have discovered any facts that would have put her on notice of Defendant's fraud. Plaintiff merely pleads that she only became aware of the

---

[3] Prior New Jersey case law also demonstrates that more specific acts of trickery are typically required to be plead for equitable tolling to apply. *Stockroom*, 941 F.Supp.2d at 541–42 (compiling cases).

"true sales" of her book in fall of 2019 through accessing her Amazon Author Central Page. (Compl. ¶ 33.)  She does not allege whether she was aware that her book was being sold on Amazon before 2019, or whether she attempted to access her book's Amazon page at all.  In fact, Plaintiff pleads no facts with regards to any actions she undertook prior to 2019, or during the term of the contract, that would warrant the conclusion that she conducted a reasonable inquiry into Defendant's alleged fraud.  During the term of the contract, Plaintiff alleges that Defendant provided her repeated sales statements reporting zero copies of her book sold, yet she does not assert that she undertook any actions to investigate upon receiving each sales statement.[4]  Indeed, on this front, Plaintiff alleges that she had "no choice but to trust the sales data that was reported by Defendant."  (Compl. ¶ 21.)  But this explanation is insufficient to show that the untimeliness of Plaintiff's claims was not attributable to her own lack of reasonable diligence.  *See Carmen*, 2010 WL 421115, at *5. (finding that plaintiffs failed to plead how their ignorance of their claim was not attributable to their own lack of reasonable diligence when "Plaintiffs only hollowly offer that they justifiably relied on [defendant's] representations").  Therefore, I find that Plaintiff has not plead sufficient facts establishing that she exercised reasonable diligence in ascertaining Defendant's alleged fraudulent concealment, such that equitable tolling would not apply.

### ii. Discovery Rule

---

[4] Yet, notably, in Plaintiff's briefing on this motion, she asserts that "every time she received a biannual 'statement' from Dorrance, Ms. Lockhart contacted Dorrance to question how Dorrance could report no sales of her novel, when Ms. Lockhart assumed her book was selling well." (Pl. Opp. Br. at 23.) Further, she alleges that "[e]very time, without fail, Dorrance ignored her requests, gave her the runaround and failed to call her back with verification of their data." (*Id.*) Despite Plaintiff's suspicion that her book was selling more copies than what Defendant was reporting, Plaintiff did not conduct any further inquiries besides contacting Defendant.  And when Defendant repeatedly ignored her requests to verify its sales numbers, Plaintiff still did not investigate further.  These factual assertions demonstrate that Plaintiff was reasonably on notice as to Defendant's potential fraud during the term of the contract, and they further negate any inference that Plaintiff exercised reasonable diligence in investigating her suspicions of fraud.  *See, e.g., Ctr. Cadillac, Inc. v. Bank Leumi Trust Co. of N.Y.*, 808 F.Supp. 213, 227 (S.D.N.Y 1992) (finding that plaintiffs' allegations that defendant repeatedly refused to provide plaintiffs with bank statements disclosing the amount of interest charged failed to allege fraudulent concealment and that such refusals should have further caused plaintiffs to suspect fraud).

While I find that Plaintiff has not met the particularity requirements of Fed.R.Civ.P. 9(b) in the context of the fraudulent-concealment doctrine, next, I consider whether the discovery rule postponed the accrual of Plaintiff's causes of action.  Generally, "the statute of limitations for a cause of action is triggered from the moment of the wrong; however, New Jersey's discovery rule delays the accrual of a cause of action until the party 'learns, or reasonably should learn the existence of a state of facts which may equate in law with the cause of action.'"  *Leake v. Bullock*, 104 N.J.Super. 309, 311–12 (App. Div. 1969) (quoting *Fishbein Family P'ship v. PPG Indus.*, 307 Fed.Appx. 624, 626–27 (3d Cir. 2009)).  The crucial inquiry is "'whether the facts presented would alert a reasonable person exercising ordinary diligence [and intelligence] that he or she was injured due to the fault of another.'"  *Szczuvelek v. Harborside Healthcare Woods Edge*, 182 N.J. 275, 281 (2005) (quoting *Martinez v. Cooper Hosp.*, 163 N.J. 45, 52 (2000)); *see also Leake*, 104 N.J.Super. at 311–12 (quoting *Lopez v. Sawyer*, 62 N.J. 267, 272 (1973)).  The standard is objective: "whether plaintiff 'knew or should have known' of sufficient facts to start the statute of limitations running." *Martinez*, 163 N.J. at 52 (quoting *Baird v. Am. Med. Optics*, 155 N.J. 54, 66 (1998)).

On a motion to dismiss, Plaintiff does not have the burden of pleading facts indicating the applicability of the discovery rule.  *Smith v. Twp. of Warren*, No. 14-7178, 2016 WL 7409952, at *15 n.12 (D.N.J. Dec. 22, 2016) (citing *Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014)).  Nor may a court assessing a motion to dismiss on statute of limitations grounds "allocate the burden of invoking the discovery rule in a way that is inconsistent with the rule that a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense."  *Schmidt*, 770 F.3d at 251 (citations omitted).  Nonetheless, to survive a motion to dismiss with respect to whether the discovery rule postponed the accrual of a plaintiff's claims, the complaint must include "sufficient factual matter" for the court to infer that discovery may show that tolling could keep alive her

otherwise untimely claims.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  Specifically, the plaintiff must plausibly plead that she "could not, by the exercise of reasonable diligence, have discovered essential information" about the alleged breach of contract.  *Aversano v. Santander Bank, N.A.*, 828 Fed.Appx. 109, 112 (3d Cir. 2020) (quoting *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1390 (3d Cir. 1994), *overruled in irrelevant part by Rotkiske v. Klemm*, 890 F.3d 422, 428 (3d Cir. 2018) (en banc)).

At issue is when Plaintiff discovered, or should have discovered with reasonable diligence, her causes of action for the statute of limitations to begin accruing.  Here, the same alleged fraudulent concealment that forms the basis for Plaintiff's invocation of the equitable tolling doctrine, is also the underlying conduct for her breach of contract claim against Defendant. Contrary to Plaintiff's position, her allegations support an inference that Plaintiff should have discovered facts relating to Defendant's fraud and contractual breach during the term of the contract.  During the term of the contract, Plaintiff asserts that "every time she received a biannual 'statement' from Dorrance, Ms. Lockhart contacted Dorrance to question how Dorrance could report no sales of her novel, when Ms. Lockhart assumed her book was selling well."  (Pl. Opp. Br. at 23.)  Further, she alleges that "[e]very time, without fail, Dorrance ignored her requests, gave her the runaround and failed to call her back with verification of their data."  (*Id.*)  Based on these allegations, it is plausible that, prior to the contract's expiration in 2015, Plaintiff had knowledge of, or at least suspected the possibility that Defendant was not providing her with accurate book sales information and thus, breaching their contract.  Plaintiff's suspicion that her book was selling more copies than what was reflected by Defendant's sales statements, along with Defendant's repeated failure to produce any requested verification of its sales numbers, should have put Plaintiff on notice of possible misconduct by Defendant.  For the statute of limitations to

accrue, "[i]t is enough that plaintiff had or should have discovered that [s]he 'may have' a basis for the claim." *Burd v. N.J. Tel. Co.*, 76 N.J. 284, 293 (1978) (emphasis added) (citation omitted).

Despite this knowledge, Plaintiff fails to plead the necessary facts as to any exercise of reasonable diligence on her part in investigating the accuracy of Defendant's sales data during the term of the contract.  Instead, she asserts that she did not know, and could not have known, even with the exercise of reasonable diligence, of Defendant's breach because "Defendant had exclusive control over sales record" and did "not share the records of authors' sales."  (Compl. ¶¶ 20, 72.) Assuming, *arguendo*, that Plaintiff had no way of confirming what her aggregate book sales were, she does not allege that Defendant's sales data was the sole source of sales data for her book.  Nor was it, as evident from the existence of the Amazon Sales Report.  Plaintiff does not plead that she made any reasonable efforts to access her sales data from any individual sales channels.  Neither does she assert any facts as to why she could not have attempted to obtain sales data from any individual sales channel.  Furthermore, Plaintiff does not allege she was unaware of the various channels through which her book was being sold or that she was somehow prevented from requesting sales data for her book from other third-party sources.  In fact, Plaintiff alleges that Defendant employed a "multitude of sales channels" to sell her book, including, *inter alia*, "Dorrance Bookstore, Amazon.com, the Kindle Store, Ingram Lightning Source, Baker & Taylor, Bowker's Books in Print, and Google Bookstore".  (Pl. Opp. Br. at 23.)  But, she fails to allege why she could not have verified any of Defendant's reported sales data with these sources.

More specifically, Plaintiff alleges that she first discovered Defendant's wrongdoing and breach of contract in the fall of 2019, years after the termination of the contract, through accessing Amazon sales data for her book that differed significantly from the sales reported by Defendant. (Compl. ¶¶ 33, 34, 35.)  However, she alleges no facts that would allow this Court to reasonably

infer that such discovery could not have occurred earlier through reasonable diligence.   For instance, Plaintiff fails to explain why it took her nine years from the date her book was published to discover and access her book's Amazon sales data.   The sales data purportedly was for sales made in 2012.   Yet Plaintiff provides no explanation why she did not access this data until seven years later.   Nor does she allege any facts negating the inference that her untimeliness was due to a lack of reasonable diligence.   Based on the allegations of the Complaint, I find that Plaintiff has not plead sufficient factual matter as to whether Plaintiff exercised reasonable diligence, as required for the discovery rule to toll the statute of limitations.   *See, e.g.*, *Mest v. Cabot Corp.*, 449 F.3d 502, 515 (3d Cir. 2006).   As plead, the discovery rule does not apply.

In sum, I find that based solely on the allegations of the Complaint, Plaintiff has not plausibly plead sufficient facts supporting the application of either doctrine.   Nonetheless, while the Court finds that, as plead, both of Plaintiff's claims are time-barred and thus, dismissed under the statute of limitations without prejudice, I consider below whether the allegations in the Complaint have sufficiently plead plausible claims under the NJCFA and for breach of contract.

### b.  Consumer Fraud Act Claim

Plaintiff's NJFCA claim is based on allegations that "Defendant engaged in unconscionable commercial practices, deception, fraud, and misrepresentations in connection with Defendant's non-disclosure and false reporting of actual book sales to Plaintiff".  (Compl. ¶ 56.)

The NJCFA imposes liability on any person who uses "any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission".  N.J.S.A. § 56:8–2.  To state a claim under the NJCFA, a consumer must plead (1) an unlawful practice; (2) an ascertainable loss; and (3) a

causal relationship between the two. *Gonzalez v. Wilshire Credit Corp*., 207 N.J. 557, 576 (2011) (internal quotations and citations omitted).

Generally, breach of contract, alone, is insufficient to give rise to an NJCFA claim. *Hunt Const. Grp., Inc. v. Hunt Sch. of Princeton*, No. 08-3550, 2009 WL 1312591, at *5 (D.N.J. May 11, 2009) (explaining that "under the NJCFA ... neither a claim for breach of contract nor fraud in the fulfillment of the contract is actionable"); *Barry by Ross v. N.J. State Highway Auth.*, 585 A.2d 420, 423 (N.J. Super. Ct. Ch. Div. 1990) (explaining that "reasonable limits must be placed upon the operation of the [NJCFA] in order that its enforcement will properly reflect legislative intent" and that the New Jersey Legislature did not intend for the NJCFA to apply to every breach of contract claim); *Cox v. Sears Roebuck & Co*., 647 A.2d 454, 462 (N.J. 1994) (holding that a breach of contract without "substantial aggravating circumstances" cannot be a basis for a claim under the NJCFA). Rather, for a party's failure to perform a contract to be actionable under the NJCFA, courts require the plaintiff to allege that the promisor knew at the time the contract was formed that the promise could not or would not be fulfilled. *Barry*, 585 A.2d at 424 (citations omitted); *Mullin v. Auto. Prot. Corp*., No. 07-3327, 2008 WL 4509612, at *3 (D.N.J. Sept. 29, 2008) (requiring evidence that defendant "never intended to fulfill its obligations under the contract" for a breach of contract to constitute a fraudulent misrepresentation under the NJCFA).

Here, Plaintiff alleges that Defendant made affirmative misrepresentations through fraudulent statements listing negligible sales and material omissions by failing to disclose actual book sales to Plaintiff. (Compl. ¶¶ 59, 70.) Specifically, "Defendant informed Plaintiff that, since 2008, only nine (9) copies of her novel had been sold, when in reality tens of thousands of copies of Plaintiff's novel had actually been sold." (*Id.* ¶ 60.)

The fraud alleged by Plaintiff is not extraneous to the contract, but rather a "fraudulent non-performance of the contract itself". *Foodtown*, 518 F.Supp. at 490 (involving allegations of misrepresentations and concealment made after the parties had entered into a contractual relationship for the purchase of merchandise). In essence, Plaintiff alleges that Defendant fraudulently breached its obligations under the contract by failing to provide Plaintiff with accurate sales records; however, that is insufficient to establish a claim under the NJCFA. *Barry*, 585 A.2d at 424 ("A failure to fulfill a promise may constitute a breach of contract, but it is not fraud and the nonperformance of that promise does not make it so") (citations omitted); *see also Billings v. Am. Exp. Co.*, No. 10-3487, 2011 WL 5599648, at *10 (D.N.J. Nov. 16, 2011) ("[A] breach of a contract does not alone violate the CFA and Plaintiff's allegation does not state a CFA claim by way of Plaintiff's addition of a legal conclusion that such conduct was 'unconscionable' within the meaning of the Act.").

Nor has Plaintiff alleged any facts suggesting that Defendant entered into the contract with the express intent of defrauding Plaintiff or that it never intended to fulfill its obligations under its terms. *Hunt Const. Grp.*, 2009 WL 1312591, at *5 (rejecting a claim that a party's failure to fully perform under a contract gave rise to an actionable affirmative misrepresentation under the NJCFA); *Anderson v. Modica*, 4 N.J. 383, 392 (1950) ("[F]raud must be in the original contract or transaction and not in the non-fulfillment of the contract."). In fact, this allegedly unlawful practice post-dates the date of the parties' agreement and the date of publication of Plaintiff's book in 2008. Accordingly, I find that Plaintiff has failed to sufficiently plead a plausible claim under the NJFCA, and that claim is dismissed with prejudice.

### c.   Breach of Contract Claim

Next, Plaintiff argues that Defendant's failure to accurately disclose sales of her book and failure to remit royalty payments to Plaintiff is a breach of Defendant's obligations under the parties' contract.  (Compl. ¶ 69; Pl. Br. at 19.)  Defendant contends that the claim for breach of contract should be dismissed because the Complaint does not plead sufficient facts establishing a breach.  (Def. Br. at 12.)  Defendant's argument rests on its position that the alleged sales number for Plaintiff's book, sold over a four-week period in 2012, is implausible and should be disregarded by the Court.  (Def. Br. at 6–7.)

To state a breach of contract claim, a plaintiff must plausibly allege: "(1) the existence of a valid contract with plaintiff and defendant; (2) a breach of the contract by defendant; (3) performance by the plaintiff of his or her obligations under the contract; and (4) resulting damages." *Oswell v. Morgan Stanley Dean Witter & Co., Inc.*, No. 06-5814, 2007 WL 1756027, at *5 (D.N.J. June 18, 2007).  The parties' arguments relate predominantly to the second element – the alleged breach.

Plaintiff alleges Defendant breached its contractual obligations during the course of the contract, from approximately August 2008 to September 2015, by falsely reporting to Plaintiff that her book sold only nine total copies when she sold at least 51,133 copies within the same period of time.  (Compl. ¶ 69.)  At issue is whether Plaintiff has plausibly alleged that her novel sold substantially more copies than Defendant reported, and that Defendant failed to remit the corresponding royalties to Plaintiff.  The plausibility of Plaintiff's claim turns on the existence and content of the Amazon Sales Report which Plaintiff allegedly accessed from her Amazon Author Central Page in the fall of 2019.  (Compl. ¶¶ 34–35.)  The Complaint asserts that "Plaintiff accessed the 4-week domestic sales report … for the period of April 9, 2012 through May 6, 2012 and was shocked to see that Amazon was reporting 51,133 copies of her novel sold in that four-week period."

(Compl. ¶ 35.)   Indeed, Plaintiff has alleged no other facts in the Complaint supporting that Defendant did, in fact, sell copies of Plaintiff's book for which she did not receive payments.[5] Notably, despite the fact that the Amazon sales data is the sole factual basis for Plaintiff's claim of breach, Plaintiff did not attach a copy of the report to the Complaint.   Plaintiff provides no explanation as to why she did not produce the report for review by this Court.   In fact, Plaintiff alleges she accessed it and viewed it through her Amazon Author Central Page, a web feature that appears to be accessible solely by Plaintiff.  (Compl. ¶¶ 34–35.)

Based on this omission, Defendant urges the Court to disregard Plaintiff's "incredible" allegation as to the sales data contained within the Amazon Sales Report, because it is "nearly untethered from reality", "lacks a substantial foundation", and defies common sense.  (Def. Br. at 6–8.)   However, at this stage, the Court, constrained by the plausibility standards in deciding a motion to dismiss, cannot do so.

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."   *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).   Here, Plaintiff did not include evidence of the Amazon sales data she alleges is accurate in the Complaint.[6]   Had it been attached, this Court would have been permitted to consider it in deciding this motion.  *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that courts may consider extrinsic documents at the motion to dismiss stage, including "exhibits attached to the complaint").

---

[5] Neither Plaintiff nor Defendant attach or provide any sales data on this motion to dismiss.

[6] Plaintiff is not required to attach specific documents or sources to which her complaint refers to survive a motion to dismiss.  *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 975 F.Supp. 584, 596 (D.N.J.1996) ("failure to attach specific documents to which the complaint refers, or to quote from them verbatim, [was not] fatal to their claims"); *see also* 5A C. Wright & A. Miller, Fed. Prac. & Proc. Civ. § 1327 (4th ed.) ("The provision for incorporation of exhibits in Rule 10(c) is permissive only, and there is no requirement that the pleader attach a copy of the writing on which his claim for relief or defense is based.").

Without the Amazon Sales Report, this Court cannot determine its existence, nor whether it, in fact, contains sales data contradicting the sales reported by Defendant. *See, e.g., Carey-Laylor v. Equifax Info. Servs., LLC*, No. 21-16953, 2022 WL 1442151, at *5 (D.N.J. May 6, 2022) (noting that, because plaintiff's complaint did not include evidence of a credit report, the court could not "definitively say whether Plaintiff's claim is accurate or inaccurate based on the whole report if it does not have the report, nor can it dismiss Plaintiff's plausible claims as inaccurate.").

Because the Complaint does not attach any documentation of the Amazon sales data, for the purposes of deciding this motion, the Court must rely on the Plaintiff's allegations contained within the Complaint, and construe the factual allegations as true by drawing all reasonable inferences from the facts alleged in favor of Plaintiff. *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Salvador v. Fedloan Servicing*, No. 20-20568, 2021 WL 5422292, at *6 (D.N.J. Oct. 28, 2021) (distinguishing cases in which "the parties did not attach the operative reporting for the courts to review when evaluating the motions to dismiss", and noting that absent such evidence, courts should construe the allegations in the plaintiffs' favor); *Samoura v. Trans Union LLC*, No. 20-5178, 2021 WL 915723, at *6 (E.D. Pa. Mar. 10, 2021) ("Courts have also declined to enter judgment as a matter of law where the parties elected not to provide exhibits showing the disputed information at the pleading stage.")

The Court acknowledges that when deciding a motion to dismiss, I need not credit a complaint's "bald assertions" or "legal conclusions" cast in the form of factual allegations, unwarranted inferences, or unsupported conclusions. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *Figueroa v. City of*

*Camden*, 580 F.Supp.2d 390, 407 (D.N.J. 2008) (categorizing an allegation as a "bald assertion" where the allegation, without even a shred of support, rose to the level of absurdity and did not even come close to approaching "plausibility".)  A claim is "frivolous" if the facts alleged are "clearly baseless", including "when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992) (noting that under 28 U.S.C. § 1915, a federal court may dismiss a claim as factually frivolous if the factual allegations are "fanciful", "fantastic or delusional scenarios").

But here, Plaintiff's factual allegations as to the Amazon Sales Report, albeit made without documentary support, do not amount to "bald assertions" that the Court may wholly disregard.[7] Nor are they "clearly baseless" such that they describe "fantastic or delusional scenarios".  *See, e.g., Barnes v. Mercer Cty. Court House*, No. 07-1194, 2007 WL 1652533, at *6 (D.N.J. June 5, 2007) (dismissing Plaintiff's allegations that he was being catered hazardous food as irrational or wholly incredible); *Frazier v. Southwoods State Prison*, No. 06-0096, 2006 WL 1044451, at *1, 3 (D.N.J. Apr. 17, 2006) (finding allegations that a tracking device was secretly implanted into an inmate's tooth so a satellite would track his movements around the prison facility were fanciful, fantastic or delusional).

---

[7] In addition to domestic book sales, Plaintiff also vaguely asserts that her book was being sold internationally. (Compl. ¶ 32 (alleging that Plaintiff's book was "selling healthily both in the U.S. and abroad.")).  Unlike the allegations of domestic sales, for which Plaintiff specifically references data from the Amazon Sales Report, Plaintiff fails to assert any facts or support for her allegation of international sales.  As such, these allegations are too vague and conclusory for the Court to credit in deciding this Motion.  Therefore, I only take as true Plaintiff's allegations with respect to domestic sales.  I also note that Plaintiff's briefing for this Motion contains new allegations relating to purported international sales of her book.  (Pl. Br., ¶¶ 16–17 (alleging that Plaintiff's book "was sold world-wide in countries such as India, Japan, Canada, France, Australia and Germany, to name a few" and "was used by schools across the world as recommended reading for certain age groups".)  These allegations are also too conclusory, and in any case, Plaintiff cannot supplement or otherwise amend the factual allegations in her complaint through briefing.

In support of its argument that Plaintiff's Amazon sales data should be discredited by the Court, Defendant requests that the Court take judicial notice of the contents of a publication by Publishers Weekly, a book publishing and book selling news magazine, listing the books that sold more than 100,000 copies in 2012.  (Def. Br. at 6 n.7.)[8]  Defendant argues that, if Plaintiff's sales number, 51,133 copies in a four-week period, is indeed accurate, then her book should be listed in the Publishers Weekly article of the top selling books of the year.  (*Id.*)  However, at the motion to dismiss stage, the Court may not consider the Publishers Weekly article cited and referenced by Defendant.  *See, e.g., St. Luke's Health Network, Inc. v. Lancaster Gen. Hosp.*, No. 18-2157, 2021 WL 4745225, at *5 (E.D. Pa. Oct. 12, 2021); *Schmidt*, 770 F.3d at 250.  As discussed *supra*, in a court's analysis of a motion to dismiss, it may only consider documents "attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'"  *Buck v. Hampton Tp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (internal quotations omitted); Fed.R.Evid. 201(b)(2) (stating that a juridically noticed fact "is not subject to reasonable dispute because it…can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").  While Plaintiff does not contest the authenticity of the article, the article was not integral to the Complaint nor was it incorporated by reference—the Complaint does not even reference the article.[9]  Nor is it a matter of public record or records of a government agency, and thus, the publication is not subject to judicial notice.  *See, e.g., Burnett v. Quest*

---

[8] Daisy Maryles, *The Highs and Lows in Paperbacks: Facts & Figures 2012*, PUBLISHERS WEEKLY (Mar. 17, 2013), https://www.publishersweekly.com/pw/by-topic/industry-news/bookselling/article/56405-the-highs-and-lows-in-paperbacks-facts-figures-2012.html.

[9] Under the integral document exception, a court may take judicial notice of documents that are "[u]ndisputedly authentic documents integral to or explicitly relied upon in the complaint."  *In re Egalet Corp. Sec. Litig.*, 340 F.Supp.3d 479, 496 (E.D. Pa. 2018) (quoting *Schmidt*, 770 F.3d at 249).  The policy rationale behind the "integral documents" exception is that "it is not unfair to hold a plaintiff accountable for the contents of documents it must have used in framing its complaint, nor should a plaintiff be able to evade accountability for such documents simply by not attaching them to his complaint."  *Schmidt*, 770 F.3d at 250.

*Diagnostic Inc.*, No. 02-73592, 2005 WL 1862342, at *3 (E.D. Mich. Aug. 3, 2005) (finding that

the court could not take judicial notice of an exhibit containing a statistic from the Department of

Labor under Fed.R.Evid. 902(5) because the exhibit did not have any identifying characteristics

indicating that it was an official publication by a public authority).   Accordingly, this Court

declines to consider the Publishers Weekly article in rendering a decision on this Motion.[10]

Thus, in examining Defendant's motion, the Court does not consider any additional sources

and considers only the allegations of the Complaint.   At this stage, taking as true the allegation

regarding the purported sales data from Plaintiff's Amazon Author Central Page, together with

Plaintiff's other allegations, I find that Plaintiff adequately states a claim for breach of contract.

Here, Plaintiff alleges the existence of an enforceable contract, including the specific term of that

contract that was allegedly breached, and resulting damages.   Plaintiff also alleges that she has

performed her obligations under the contract while Defendant has breached its contractual duties

by failing to remit royalty payments for additional undisclosed sales of Plaintiff's book.   The

question at this stage is merely whether Plaintiff's factual allegations are sufficient to "raise a right

to relief above a speculative level".   *Twombly*, 550 U.S. at 555.   While I am required to take

Plaintiff's allegations as true, including those with respect to the Amazon sales data, I am skeptical

that the Amazon Sales Report supports the sales numbers that Plaintiff has alleged.[11]   However, I

---

[10] Defendant fails to attach the article, nor does it provide the legal basis upon which this Court may take judicial notice of it.  "On a motion to dismiss the Court is free to take judicial notice of certain facts that are of public record if they are provided to the court by the party seeking to have them considered." *Diceon Elecs., Inc. v. Calvary Partners, L.P.*, 772 F.Supp. 859, 861 (D. Del. 1991); *accord Concordia v. Bendekovic*, 693 F.2d 1073, 1076 (11th Cir. 1982) (finding that the court will not take judicial notice of records in another case unless prior proceedings are introduced into evidence).

[11] The fact that the Amazon sales data is allegedly only accessible by Plaintiff and serves as the critical and sole basis for her allegations of breach, casts further doubt upon Plaintiff's claim.  Nor does Plaintiff explain why she only pleads the specific number of copies her book sold for a single four-week period in 2012, approximately four years after her book was first published.  For instance, Plaintiff alleges that her Amazon Author Central Page "reports the number of units sold and organizes the data by geographic region."  (Compl. ¶ 34.)  Yet, Plaintiff does not allege any specific sales numbers before or after this four-week period in 2012 or even the total historical sales for her book on Amazon. Further, I note that the existence of outside sources support the notion that it is implausible that the Amazon sales numbers Plaintiff alleges are accurate.  While I did not take notice of the contents of the Publishers Weekly article

cannot dismiss Plaintiff's claim because "it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted).  "Rule 12(b)(6) does not countenance 'dismissals based on a judge's disbelief of a complaint's factual allegations.'" *Port Auth. of N.Y. & N.J. v. Arcadian Corp.*, 991 F.Supp. 390, 398 (D.N.J. 1997) (quoting *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989)).  Because I must take Plaintiff at her word as to the purported existence and accuracy of the Amazon Sales Report set forth in the Complaint, Plaintiff has sufficiently alleged breach. *See, e.g., Carey-Laylor*, 2022 WL 1442151, at *5 (denying motion to dismiss because plaintiff's complaint did not include evidence of a credit report and the court, construing plaintiff's factual allegations as to the report as true, found that the facts pleaded in the complaint may reasonably support relief); *In re Empyrean Biosci., Inc. Sec. Litig.*, 255 F.Supp.2d 751, 762–63 n.8 (N.D. Oh. 2003) (finding that plaintiff sufficiently alleged a large trading volume of shares based on the face of the complaint, without the court needing to refer to a NASDAQ report supporting the number of shares plaintiff alleged); *Brandes v. IDOC*, No. 18-1438, 2018 WL 4283039, at *5 (S.D. Ill. Sept. 7, 2018) (finding that plaintiff's allegation that he wrote letters to two attorneys with no response could represent reasonable efforts to obtain counsel despite the plaintiff having failed to attach any documentation of his correspondence).  Her claims are nonetheless dismissed because they are not timely.

## IV.    CONCLUSION

---

cited by Defendant at this time, I am aware of its contents, including the lack of Plaintiff's book on the publication's list of bestselling books for the year.  In addition, as mentioned *supra* n.1, the Amazon book page for Plaintiff's book also contains information that calls into question the sales data upon which Plaintiff relies.  As of the date of this Opinion, the Amazon book page only includes two customer reviews for Plaintiff's book.  The page also lists Plaintiff's book "best sellers ranking" as number 7,990,033 in the category "Books" and number 2,630,472 in the category "Literature and Fiction".  AMAZON, https://www.amazon.com/gp/product/0805961208/ref=dbs_a_def_rwt_bibl_vppi_i0 (last visited Jan. 10, 2023).  The lack of customer reviews and such a low ranking of Plaintiff's book are inconsistent with a book that is allegedly capable of selling over 50,000 copies over a four-week period.

For the foregoing reasons, Defendant's motion to dismiss is **GRANTED**.  However, Plaintiff's breach of contract claim is dismissed without prejudice.  To the extent that Plaintiff believes she may cure the deficiencies in her pleading for statute of limitations purposes, she is given leave to amend her complaint as to her breach of contract claim only, within 30 days from the date of the accompanying Order.


Date: January 10, 2023                                    /s/ Freda L. Wolfson
                                                          Hon. Freda L. Wolfson
                                                          U.S. Chief District Judge